## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY A. ANDREATTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 11-3158-CV-S-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Mary Andreatta challenges the Social Security Commissioner's denial of her application for disability income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq*.

Andreatta argues that the Administrative Law Judge ("ALJ") erred by (a) assigning improper weight to the opinion of a treating physician and to the opinion of a consultative examiner; (b) finding not severe Andreatta's fibromyalgia; (c) assessing an improper residual functional capacity ("RFC") to Andreatta; and (d) discounting Andreatta's credibility. Andreatta also argues that the Appeals Council erred by failing to consider new evidence submitted by Andreatta when it denied Andreatta's request for review of the ALJ's decision. Because the Court finds persuasive some of these arguments, the Court reverses the ALJ's decision and remands for further consideration.

### I.       Background

1

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Andreatta alleged that she became disabled on February 7, 2008, at age 47 (Tr. 96). In disability reports, Andreatta alleged an inability to work due to diabetes mellitus and diabetic neuropathy (Tr. 129, 174).

Dennis E. Robinson, D.O., assessed bilateral carpal tunnel syndrome in March 2005, after a nerve conduction study was positive for moderate neuropathy on the right and left (Tr. 234). He recommended conservative treatment (Tr. 243).

In February 2006, Dr. Robinson noted tenderness in Andreatta's lumbar spine, reduced flexion/extension, and muscle spasm, but a straight leg test was negative (Tr. 235-37). Andreatta had normal range of motion and no tenderness or swelling in her upper and lower extremities (Tr. 235-337). In June 2006, Dr. Robinson observed no abnormalities in Andreatta's back and extremities on examination (Tr. 234-35). In July 2006, examination indicated increased sensitivity in Andreatta's lower legs consistent with neuropathy, but she refused an appointment with a neurologist (Tr. 233-34). Andreatta's upper and lower extremities exhibited no abnormalities in September 2006 (Tr. 232-33).

A physical examination in January 2007 showed tenderness on palpation in the back, and blood pressure of 110/74 (Tr. 193). In November 2007, Dr. Robinson diagnosed a sprain/strain of the right shoulder (Tr. 223). In December 2007, Andreatta complained that she could "hardly work" due to pain and aches in her right arm (Tr. 222). Dr. Robinson

---

[1] Portions of the parties' briefs are adopted without quotation designated.

diagnosed neuropathy, and noted a reduced range of motion in the right shoulder (Tr. 222).

He injected Andreatta's shoulder with lidocaine (Tr. 222). In January 2008, Dr. Robinson

noted normal range of motion, with no joint tenderness or swelling in the lower or upper

extremities (Tr. 221). Dr. Robinson stated in a letter dated January 30, 2008, that Andreatta

had diabetes mellitus and diabetic neuropathy and had "frequent episodes of this with pain"

(Tr. 209).

On February 8, 2008, Andreatta presented to Dr. Robinson with complaints of pain in

her right arm and legs and the physician assessed diabetic neuropathy (Tr. 220-21).

Examination indicated Andreatta's right arm was tender, with decreased range of motion, but

revealed no evidence of lower extremity abnormalities (Tr. 220). On March 12, 2008, Dr.

Robinson assessed diabetic neuropathy, lower back pain, and uncontrolled diabetes after

Andreatta complained of "lower back pain and spasm, lots of neuropathic pain in the legs and

feet" (Tr. 219). Dr. Robinson indicated no objective findings in support of his diagnoses (Tr.

219).

Andreatta did not see Dr. Robinson again until June 12, 2008, when she sought

treatment following hospitalization for diabetic ketoacidosis (Tr. 309). The physician noted

Andreatta was "doing better" (Tr. 309). On July 1, 2008, Dr. Robinson found no

abnormalities of the upper or lower extremities on examination (Tr. 308). On August 27,

2008, Dr. Robinson noted Andreatta's right shoulder had reduced range of motion, but was

not tender (Tr. 307). Andreatta's right forearm was tender (Tr. 307). Andreatta reported

"lots of neuropathic pain" to Dr. Robinson on September 10, 2008, but the physician noted no abnormalities on examination (Tr. 306). On October 8, 2008, Dr. Robinson noted Andreatta had neuropathic pain in her legs and feet, right shoulder tenderness with crepitus, and hand pain (Tr. 305).

A nerve conduction study on October 22, 2008, indicated carpal tunnel syndrome (Tr. 279-80). Dr. Robinson noted on October 27, 2008, that Andreatta's hands were tender (Tr. 304). On November 25, 2008, Dr. Robinson assessed uncomplicated diabetes, neuropathy, and carpal tunnel syndrome (Tr. 302). Objective examination findings were normal, but for a wart that the physician removed from Andreatta's finger (Tr. 302).

Andreatta sought treatment for sinus problems and congestion in December 2008, and Dr. Robinson indicated normal range of motion and no tenderness or swelling of her upper or lower extremities (Tr. 301). Dr. Robinson diagnosed shoulder problems on January 13, 2009, but an examination showed full range of motion with only slight tenderness to deep palpation in the anterior shoulder and discomfort with resistance (Tr. 300).

On March 4, 2009, Dr. Robinson assessed diabetic neuropathy and uncomplicated diabetes (Tr. 295). Examination indicated decreased sensation in both feet, and some fungus on the nails, but was otherwise normal (Tr. 295). At an appointment on March 12, 2009, Dr. Robinson noted Andreatta's blood sugar was up (Tr. 294). On April 20, 2009, Dr. Robinson assessed abdominal pain and neuropathy, but indicated no objective findings in support (Tr. 292).

4

Andreatta followed up with Dr. Robinson on May 21, 2009, and he assessed neuropathy, fibromyositis, and low back pain (Tr. 289). Physical examination was normal (Tr. 289). On June 23, 2009, Dr. Robinson's assessment was unchanged, and he indicated no objective medical findings (Tr. 288).

On October 12, 2009, Andreatta's attorney submitted an undated medical source statement by Dr. Robinson (Tr. 332-35). Using a three-page form, Dr. Robinson opined that Andreatta could occasionally lift and carry 10 pounds, frequently lift and carry five pounds; stand or walk 30 minutes continuously for a total of three hours in an eight-hour workday; and sit 30 minutes continuously for a total of four hours in an eight-hour workday (Tr. 333). The physician indicated that Andreatta's ability to push and pull was limited due to "neuropathy in both hands and feet" (Tr. 333). Dr. Robinson indicated Andreatta could never climb, balance, stoop, kneel, crouch, or crawl, and could occasionally reach, handle, finger, and feel due to neuropathy with loss of sensation in her hands (Tr. 334). He further noted that Andreatta could have no exposure to vibration (Tr. 334). Andreatta would require up to 20-minute rest periods every 30 to 60 minutes throughout an eight-hour workday, Dr. Robinson opined (Tr. 335). He also indicated that Andreatta's impairments would likely disrupt her work schedule 20 times per month for one to two hours (Tr. 335). Finally, Dr. Robinson noted that he did not consider Andreatta's pain or other subjective complaints in giving his opinions (Tr. 335).

On December 12, 2009, Anthony P. Zeimet, D.O., performed a consultative

Case 6:11-cv-03158-NKL   Document 15   Filed 05/21/12   Page 5 of 22

examination of Andreatta (Tr. 338-49). Dr. Zeimet observed that Andreatta was in no apparent distress and was able to get on and off the examination table and up and out of the chair without much difficulty (Tr. 339). He noted that Andreatta preferred to stand during the examination and had a flat affect (Tr. 339). Andreatta had full strength and range of motion in her upper and lower extremities, but had diminished sensation in her bilateral lower extremities (Tr. 340, 348). Dr. Zeimet observed full range of motion in Andreatta's spine, and Andreatta was able to walk on her heels and toes and squat (Tr. 340). A straight leg test was normal (Tr. 340).

Dr. Zeimet opined that Andreatta could work an eight-hour day, but preferred standing and walking due to back pain and should be allowed to change positions occasionally (Tr. 341). The physician noted that Andreatta could probably lift and carry 20 pounds occasionally and lift 10 pounds frequently, and had no limitations in range of motion, including squatting (Tr. 341-42). Her ability to grip and grasp was also intact (Tr. 341). Dr. Zeimet opined that Andreatta could sit for 45 minutes continuously and five hours total, and stand and walk for one hour continuously and four hours total, in an eight-hour day (Tr. 343). She had no limitations in reaching, handling, fingering, feeling, pushing, or pulling, and could occasionally operate foot controls (Tr. 344). Dr. Zeimet opined that Andreatta could never climb ladders or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; and frequently climb stairs and ramps (Tr. 345). She should have no exposure to unprotected heights, operate a motor vehicle no more than occasionally, and could tolerate frequent

6

exposure to moving mechanical parts, humidity, wetness, extreme cold and heat, vibrations, and loud noise (Tr. 346).

Andreatta testified at the administrative hearing on November 9, 2009. Using written interrogatories, the ALJ posed a hypothetical question to the vocational expert that included an individual of Andreatta's age, education, work history, and RFC (Tr. 187). In response, the vocational expert stated that such an individual could perform Andreatta's past work as a credit card clerk, customer service clerk, and order clerk (Tr. 187). The ALJ concluded that Andreatta was not disabled.

Following the ALJ's decision, Andreatta submitted additional evidence to the Appeals Council (Tr. 351-456). On October 6, 2009, Andreatta saw Dr. Robinson for emergency room follow up and a medical source statement, complaining of back and extremity pain (Tr. 362). The physician noted restricted range of motion of the neck with muscle spasms (Tr. 362). Andreatta also exhibited restricted range of motion, pain, muscle spasms, and point tenderness in her lumbar spine, and pain, tenderness, and muscle spasms in the thoracic region (Tr. 362). A straight leg test was negative (Tr. 362). Dr. Robinson noted neuropathy in both hands, with decreased sensation and strength bilaterally (Tr. 362). He assessed diabetic neuropathy, low back pain, and irritable bowel syndrome (Tr. 362).

On November 13, 2009, Andreatta reported intermittent chest pain and difficulty breathing, sinus congestion, and sore throat (Tr. 360). Dr. Robinson assessed acute

bronchitis and fibromyositis, but the only abnormalities noted on examination were red and inflamed throat and postnasal drainage (Tr. 360). The physician again assessed fibromyositis and irritable bowel syndrome on December 16, 2009, noting no abnormalities, normal range of motion, no joint tenderness, and no swelling of the upper or lower extremities (Tr. 359).

Andreatta presented to Dr. Robinson on January 19, 2010, for medication refills and with complaints of congestion and left hip pain (Tr. 357). The physician assessed Eustachian tube dysfunction and uncomplicated diabetes (Tr. 357). Examination indicated no abnormalities (Tr. 357). On March 1, 2010, Andreatta complained of a sore throat, sinus congestion, and left knee pain (Tr. 356). Dr. Robinson assessed acute pharyngitis, knee effusion, and palpitations (Tr. 356). Andreatta's left knee was tender, with reduced range of motion, but her upper extremities and neck were normal (Tr. 356).

Medical records from Center for Pain Management, Curt Evenson, M.D., show that on June 23, 2010, Andreatta presented with low back pain. She reported that her pain was worse with sitting, walking, standing and when she tried to bend over, and that she only experienced relief from pain when she could lie down and use body pillows. She further reported that she had tried many different medication regimens with no success. Upon examination the physician stated that Andreatta was limited in her range of motion; her gait was slow; and there was pain to palpation in the midline lower lumbar region. The physician diagnosed chronic pain, chronic lower back pain probably secondary to spondylolisthesis, and fibromyalgia. He recommended that she continue her current medications that were

8

prescribed by Dr. Robinson (Tr. 388, 390-392)

On August 30, 2010, Andreatta presented with continued right shoulder pain. She reported that the injections that she had received earlier did not help with her pain and that she had continued with her home program with no relief. The physician diagnosed right shoulder pain with rotator cuff tendonitis/biceps tendonitis. The physician recommended an injection into her bicipital groove. Andreatta agreed and an injection was administered. The physician instructed her to continue with her home program. If there was no improvement in 4-6 weeks, an MRI would be scheduled (Tr. 382). On September 8, 2010, Andreatta presented for a Lumbar Nerve Block at L3, L4 and L5. Her postoperative diagnosis was lumbar spondylosis (Tr. 376). On September 22, 2010, Andreatta presented for a Lumbar Radiofrequency ablation at L3, L4 and L5. Her postoperative diagnosis was lumbar spondylosis (Tr. 374)

## II.     Analysis

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007).

### A.     Whether the Commissioner Erred in Failing to Consider New Evidence Submitted to the Social Security Appeals Council

Andreatta argues that the Commissioner erred in failing to consider new evidence submitted to the Social Security Appeals Council. Because this evidence was submitted to the Appeals Council, the Court must consider "if the additional evidence is (a) new, (b)

9

material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171, 171 n.4 (8th Cir. 1995) (internal quotes omitted). If the evidence meets these three requirements, and the Appeals Council failed to consider it, then the Court can remand the case for further reconsideration. *Id*.

The Commissioner argues that the ALJ did, in fact, consider the new evidence in denying Andreatta's request for review. The only evidence for this position is what appears to be a boilerplate notice by the Appeal Council stating that it reviewed Andreatta's record and considered whether it received "new and material evidence and [whether] the decision is contrary to the weight of all the evidence now in the record." [Doc. # 5-3 at 2]. The Commissioner appears to be correct that in this situation, the Eighth Circuit has accepted the Appeals Council's claim that it reviewed new evidence. *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997). But in such a situation, the Court is required to "speculate on how the ALJ would have weighed the newly submitted reports had they been available at the initial hearing." *Id*.

Andreatta argues that Dr. Evenson's records showing limited motion, as well as a nerve block and lumbar radiofrequency ablation for Andreatta's back pain in September 2010, rendered "patently erroneous" the ALJ's observation that Andreatta had successful surgery on her shoulder in January 2009, and was "doing well" in March 2009. [Doc. # 11 at 50]. Andreatta has not explained how treatment for back pain relates to whether Andreatta's shoulder surgery was successful, and the Court disagrees that the ALJ's characterization was

10

erroneous when made. But the Court agrees that this new evidence is inconsistent with the ALJ's discussion and would perhaps alter the ALJ's conclusion that the "medical records do not show that any physician ordered an X-ray or other diagnostic test for back pain, nor did the treating physician refer the claimant to a specialist for further diagnosis or treatment." [Doc. # 5-3 at 25]. Dr. Evenson's records reflect that Andreatta's back pain is more serious than appeared from the medical records at the time of the ALJ's decision. Thus, substantial evidence no longer exists for the ALJ's characterization of Andreatta's back pain, and it is appropriate to remand to the ALJ to incorporate this new evidence. On remand, the ALJ should consider the rest of the documents that Andreatta supplied to the Appeals Council as well.

### B.      Whether the ALJ Assigned Proper Weight to Medical Opinions

Andreatta argues that the ALJ erred by failing to afford controlling weight to the opinions of treating physician Dr. Robinson and by affording any amount of weight to the opinions of consultative examiner Dr. Zeimet. Andreatta is correct that as a general rule, "the report of a consulting physician who examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (internal alterations omitted). But the Eighth Circuit has expressly recognized an exception to this general rule, and upheld an ALJ's decision to "discount or even disregard" the opinion of a treating physician where the opinion of a one-time consultant was

"supported by better or more thorough medical evidence." *Id*.

The question, then, is whether substantial evidence existed for the ALJ's conclusion that the opinions of Dr. Zeimet were supported by better or more thorough medical evidence than the opinions of Dr. Robinson. Andreatta relies heavily for her argument on a footnote in which she has assembled "virtually countless notes" from Dr. Robinson that "demonstrate constant problems from the numerous impairments." [Doc. # 11 at 28]. But this footnote does not address the ALJ's valid concerns that the *quality* of those opinions was lacking.

For example, the ALJ noted that Dr. Robinson's "explanations for these strict limitations are virtually nonexistent" [Doc. # 5-3 at 23]. The ALJ also noted that Dr. Robinson "did not provide any laboratory findings, symptoms, or allegations (including pain) to corroborate the...limitations indicated." *Id*. "A treating physician's opinion deserves no greater respect than any other physician's opinion when it consists of nothing more than vague, conclusory statements." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (internal alterations omitted). Andreatta does not argue that Dr. Robinson adequately explained his conclusions, or explain why Dr. Robinson's opinions were entitled to controlling weight despite their conclusory nature. In contrast, the Commissioner argues that Dr. Zeimet supported his conclusions with the findings of objective examinations. For example, Dr. Zeimet observed that Andreatta had little difficulty getting on and off the examination table, that he found no limitation in her range of motion in her shoulder and wrists, that Andreatta had full strength in upper and lower extremities with diminished

12

sensation in her bilateral lower extremities, and that Andreatta had the full range of motion in her spine with normal straight leg raises. On this record, substantial evidence existed for the ALJ to conclude that Dr. Zeimet's opinion was based on better medical evidence than the opinion of Dr. Robinson. The ALJ was thus entitled to weigh the opinion of Dr. Zeimet more heavily than the opinion of Dr. Robinson in this instance.

The ALJ noted when discussing Dr. Robinson's suggested limitations that "the medical records in evidence show no indications of such physical limitations either ordered by the treating physician or complained of by the claimant (except for one complaint regarding difficulty gardening)." [Doc. # 5-3 at 23]. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue,* 578 F.3d 838, 843 (8th Cir. 2009).

Andreatta argues that the lack of physical limitations in Dr. Robinson's treatment notes is irrelevant because "physicians do not normally list functional limitations in their treating notes." [Doc. # 11 at 30]. Andreatta's sole basis for this claim is regulation SSR 96-5p, which requires ALJs to ask physicians to provide medical source statements discussing the claimant's physical capabilities. Andreatta argues that this regulation would be unnecessary if physicians regularly included physical limitations in their treatment notes. Andreatta's argument is not persuasive.

The Court agrees that because treatment notes are not usually prepared for the purpose of determining disability, they may not always reflect a physician's full opinion about how

13

a claimant's impairments would limit them in the workplace. But the Court also agrees with the Commissioner that where a physician has treated a claimant for years without ever observing in her treatment notes any physical limitations in the claimant, and without ever suggesting any limitation on activities to the claimant as part of their treatment, that an opinion by that physician assessing severe limitations is inconsistent with those treating notes and can permissibly be discounted. *See Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009) (noting that the alleged limitations "were not at the direction of any physician" and that a "lack of functional restrictions is inconsistent with a disability claim."). The Commissioner has pointed out that Dr. Robinson frequently noted no abnormalities on physical examination of Andreatta. Further, Andreatta has not addressed the ALJ's observation that Dr. Robinson's notes did not record any complaints by Andreatta that her impairments limited her activities, with the exception of a complaint about difficulty gardening. Thus, the lack of limitations in Dr. Robinson's notes also supports the ALJ's decision to assign greater weight to the opinion of Dr. Zeimet than to the opinion of Dr. Robinson.

The ALJ also pointed out that Dr. Robinson's opinions are largely based on Andreatta's subjective complaints. [Doc. # 5-3 at 24]. Andreatta argues that this was error, pointing to a case that stated: "the ALJ improperly discounted medical diagnoses as having been based only on [the claimant's] own recitation of events. A patient's report of complaints, or history, is an essential diagnostic tool." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997). But the *Flanery* court also observed that in that case, the claimant's subjective

14

complaints were "consistent with objective tests...the nature of her disorder, and eyewitness testimony." *Id*. Here, to the extent that Andreatta's subjective testimony even supports the limitations assessed by Dr. Robinson, Andreatta has not argued or demonstrated that her subjective complaints were consistent with objective tests, the nature of her disorder, or eyewitness testimony, and it appears from the record that such an argument would not be persuasive. Thus, substantial evidence supports the ALJ to weigh this factor in assigning less weight to Dr. Robinson's opinion.

Andreatta argues that the ALJ failed to develop the record by relying, in part, on the fact that Dr. Robinson's report was undated in discounting Dr. Robinson's opinion. The ALJ has a "duty in developing a reasonably complete record." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996). An ALJ "does not, however, have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Here, the ALJ did not indicate, and Andreatta has not argued, that the date of Dr. Robinson's report was a crucial issue. Rather, that the report was undated was the last of what appear to be alternative reasons why the ALJ discounted Dr. Robinson's opinion. Andreatta has not explained how the lack of dates would have led the ALJ to make a mistaken assumption about timing that could have affected the outcome of the ALJ's decision. Because no crucial issue was undeveloped, the ALJ did not err in failing to determine the date of Dr. Robinson's report.

Andreatta also argues that the ALJ erred by failing to develop the record by relying on

the opinion of Dr. Zeimet, who Andreatta argues did not have access to Andreatta's complete record when he rendered his opinion. Andreatta relies on an unreported district-court case that found a doctor's report to be of "little or no value" where the doctor had only reviewed a one-page letter about the claimant's medical history before rendering his opinion. *Mateer v. Brown*, 702 F. Supp. 220 (S.D. Iowa 1988). Andreatta's only evidence that Dr. Zeimet possessed an incomplete record is the following statement that Dr. Zeimet made in a report: "I do have a few records for review today." [Doc. # 5-8 at 150]. But that same report by Dr. Zeimet discusses, in twenty-two lines of text, a multitude of medical documents reviewed by Dr. Zeimet. [Doc. # 5-8 at 150-51]. Further, Andreatta has not disputed that Dr. Zeimet personally examined Andreatta. Finally, Andreatta has not pointed to any specific finding by Dr. Zeimet that contradicts any specific item in Andreatta's medical history so as to suggest that Dr. Zeimet did not have access to that record or that this lack of access might have affected Dr. Zeimet's conclusion. For these reasons, to the extent Dr. Zeimet did not have possession of some items in Andreatta's medical file, this did not create an unresolved crucial issue that the ALJ was obligated to further develop. Thus the ALJ did not err in this regard.

Andreatta appears to argue that opinions of consultative examiners are "suspect" and should thus be ignored by ALJs. Andreatta points out that the United States Supreme Court did not question the Ninth Circuit's "concern that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their

employers money and to preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (1965) (internal quotes omitted). Andreatta then claims, without any citation, explanation, or evidence, that Dr. Zeimet "has a well-earned reputation for concluding that disabled individuals are able to return to work." [Doc. # 11 at 35]. Andreatta has not argued or explained whether the arrangement between the Commissioner and Dr. Zeimet is analogous to the relationship of ERISA plan consultants and ERISA plans as involved in *Nord*. Further, Andreatta does not even attempt to support her claim that Dr. Zeimet is routinely retained for disability consultations, let alone that he has a reputation for concluding that disabled individuals are able to work. Finally, as discussed above, the Eighth Circuit has upheld an ALJ's decision to weigh the opinion of a consultative examiner higher than that of a treating physician where the former was based on better or more thorough medical evidence. *See Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). The Court is thus not persuaded by this argument.

Substantial evidence existed for the ALJ's conclusion that Dr. Zeimet's opinion was supported by better or more thorough evidence than Dr. Robinson's opinion, and the ALJ was thus entitled to assign more weight to the opinion of Dr. Zeimet. The Court thus need not address Andreatta's argument that because Dr. Seimet's opinion is "a nullity", that "Dr. Robinson's opinions are, in effect, uncontradicted in the record" and that the ALJ thus substituted his opinion for that of Dr. Robinson.

**C.    Whether the ALJ Properly Found Not Severe Andreatta's Fibromyalgia**

Andreatta argues that the ALJ erred in finding not severe her impairment of fibromyalgia. An impairment is not "severe" if it does not have a significant impact on an individual's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Id*. (internal citations omitted).

The Commissioner admits that the ALJ properly found that Andreatta had often been diagnosed with fibromyalgia, but argues that, with regard to fibromyalgia, "there is little objective evidence of symptoms, and no evidence of any resulting limitations." [Doc. # 14 at 20]. For example, neither Dr. Robinson nor Dr. Zeimet included any limitations due to fibromyalgia in their medical source statements. (Tr. 19, 332-35, 338-49). Andreatta has not countered this argument with evidence of limitations, but rather renews her argument that treating notes normally do not contain functional limitations and that it was the ALJ's obligation to contact these doctors and ask whether Andreatta's fibromyalgia would cause her functional limitations. The Court rejects this argument for the same reasons stated above: lack of functional limitations over a medical history is, in fact, evidence that no functional limitations exist, and Andreatta has not pointed to evidence outside the record demonstrating that the ALJ left a crucial issue undeveloped. Substantial evidence existed for the ALJ's conclusion that Andreatta's fibromyalgia was not severe.

### D. Whether the ALJ Assessed an Improper RFC to Andreatta

Andreatta argues that the ALJ's decision should be reversed for improperly using

Case 6:11-cv-03158-NKL   Document 15   Filed 05/21/12   Page 18 of 22

boilerplate language in portions of Andreatta's RFC. Andreatta cites out-of-Circuit cases holding that a boilerplate statement alone is not sufficient to demonstrate that the ALJ sufficiently considered all of the relevant evidence. *See Carter v. Apfel*, 220 F. Supp. 2d 393, 397 (M.D. Pa. 2000). But those cases do not stand for the proposition that an ALJ's decision should be reversed simply because boilerplate language appears in his or her decision. Rather, those cases state that when such boilerplate language is not accompanied by case-specific analysis that supports the ALJ's conclusion, the boilerplate language alone is not sufficient to support the ALJ's conclusion. Thus, these cases do not apply to the ALJ's decision, because the boilerplate language referred to by Andreatta followed several pages of analysis supporting the ALJ's conclusions.

Andreatta also argues that the ALJ erred by relying on a physical residual functional capacity assessment completed by a single decision maker in assessing an RFC to Andreatta. Andreatta provides a memorandum stating that it is agency policy for ALJs not to evaluate the opinions of single decision makers in ALJ opinions. [Doc. # 11-1]. The Commissioner agrees that the single decision maker's opinion was "not medical evidence and was not properly considered by the ALJ." [Doc. # 14 at 27]. But the Commissioner argues that the RFC assessed by the ALJ to Andreatta was supported by substantial evidence even absent the single decision maker's opinion.

The Commissioner also argues that it is clear that the ALJ did not actually rely on the single decision maker's report, but this argument is unconvincing. For example, it is clear

19

that the ALJ relied heavily on Dr. Zeimet's opinions in formulating an RFC, and it is also clear that part of the reason the ALJ relied so heavily on those opinions is because they were "consistent with those [findings] previously determined in the Physical Residual Functional Capacity Assessment" completed by a single decision maker. [Doc. # 5-3 at 23].

Andreatta has not provided authority suggesting that failure to comply with agency policy is a reversible error, but neither has the Commissioner provided authority that this admitted legal error is "harmless" when the ALJ's conclusion would be supported by substantial evidence in absence of reliance on the improper source. Ultimately, it appears remand is appropriate on this point. The ALJ expressly relied on a report of specific functional limitations from an improper source in formulating his own functional limitations for Andreatta. It is simply impossible to determine what limitations the ALJ would have assessed had he not relied on this improper source. The Eighth Circuit has observed that "the RFC finding will often be the most important issue in a social security claim." *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir. 1983). Further, the Eighth Circuit has remanded a case where the ALJ could have permissibly discounted the opinion of a consultative examiner, when it was "unclear whether the ALJ *did* discount [the] opinion, and, if it did so, why." *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (emphasis in original). Similarly, the Court here would remand even if the RFC would be permissible absent consideration of the single decision maker's report. Because the ALJ's current reasoning relies on an impermissible source, substantial evidence does not currently exist for the RFC

20

assessed by the ALJ and the Court thus remands for reconsideration of this issue.

Andreatta also argues that the ALJ erred by not including specific limitations from Andreatta's fibromyalgia in the ALJ's hypothetical to the vocational expert. Because substantial evidence existed for the ALJ's conclusion that Andreatta's fibromyalgia was not severe, the ALJ's hypothetical was appropriate. *See Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997) ("[T]estimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.").

### E.    Whether the ALJ Improperly Discounted Andreatta's Credibility

Andreatta argues that the ALJ improperly discredited her credibility. Because the Court is remanding for consideration of new evidence, the Court need not determine whether the ALJ properly found that the record at the time of decision did not support Andreatta's subjective complaints. On remand, the ALJ should reassess Andreatta's credibility in light of the new evidence provided.

### III.    Conclusion

Accordingly, it is hereby ORDERED that Mary Andreatta's Petition [Doc. # 3] is GRANTED. The decision of the ALJ is REVERSED and remanded for reconsideration consistent with this Opinion.

Case 6:11-cv-03158-NKL   Document 15   Filed 05/21/12   Page 21 of 22

s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated: May 21, 2012
Jefferson City, Missouri